## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT MICHIGAN

COURTNEY KLIMKOWSKI,
        Plaintiff,

                          Case No. 23-cv-12806

V

ROYAL OAK SCHOOLS; and
MARY BETH FITZPATRICK and
PATRICK WOLYNSKI in their individual
and official capacities,
               Defendants.

_____/

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
### FOR TEMPORARY RESTRAINING ORDER F.R.C.P 65(b)

## FACTUAL STATEMENT

Plaintiff Courtney Klimkowski is a resident of Royal Oak, she and her husband are homeowners, and she is a taxpayer with two students enrolled in Royal Oak Schools, MK (age 9) who attends Northwood Elementary School in Royal Oak, MI and GK (age 4) who attends Adams Elementary in Royal Oak, MI.

Mr. and Mrs. Klimkowski were contacted for a meeting at Northwood Elementary School on Friday October 20, 2023, at approximately 11:00 a.m., regarding an allegation that MK had exposed his genitalia to 3 students. The allegations were from three students watching from a window inside

Northwood who claim they saw MK 'expose himself' standing outdoors on the other side of the window.  The school administration, specifically the principal, Molly Bascom-Keller, communicated to Plaintiff that the incident had occurred and that there was 'video' of the incident. Upon arrival at the meeting with the Principal, MK and his parents, the alleged conduct was reported to MK's parents as conclusive. Prior to meeting with the Klimkowski's, Principal Bascom-Keller indicated that the 'incident' had already been reported to the parents of the three students who reported the conduct. The Klimkowski's viewed the video with MK and Principal Bascom-Keller.  The Klimkowski's repeatedly told Principal Bascom-Keller the video categorically does not show MK exposing himself.

Plaintiff further states the video shows MK waiving to persons on the other side of the window, MK then pulls his pants up, which were apparently loose, and then MK adjusts his undergarments from over his clothes.  The video at no time shows or verifies that MK exposed any part of his person. The meeting that Friday October 20, 2023, with the school administration was concluded and no disciplinary action was taken by the school and/or administration. Plaintiff Klimkowski on Monday October 23, 2023, began emailing Principal Bascom-Keller regarding the allegations and her dissatisfaction at how she handled the same.  Plaintiff asked for a meeting

with her and the parents of the students who reported the incident.  Plaintiff Klimkowski was seeking to clarify the allegations, including whether the incident was falsely reported by the other students. Plaintiff Klimkowski was repeatedly told that the incident was considered closed upon the allegations of the three students, and that their "stories were the same". Mrs. Klimkowski's concerns and requests for additional information were largely ignored.

The Principal, Bascom-Keller indicated that an 'action plan' was implemented for MK.  The Klimkowski's were not presented with any written plan, disciplinary action, or incident report. On Wednesday October 25, 2023, upon the advice of counsel Plaintiff Klimkowski went to Northwood to inspect MK's student record for any reference of the incident and to inspect the student record for the "action plan".  Plaintiff was denied access to the student file and told that staff at Northwood "had a school to run" and that she could return to inspect the file later that day.  Plaintiff Klimkowski had and still has the legal authority to inspect the student record of her child and Defendants are legally bound to produce a student's file upon demand under The Family Educational Rights and Privacy Act (FERPA) 20 U.S.C. § 1232g. When Plaintiff Klimkowski returned, she was again denied access to the original student file and provided what the administration copied.  Royal Oak

Public Schools through their agent, Molly Bascom-Keller violated 20 U.S.C. § 1232g when they refused to produce MK's student record and only provided photocopies which may/may not be a complete record. Further, Defendants No Trespass Order is retaliatory for Plaintiff attempting to enforce her right under 20 U.S.C. §1232g.

On Friday October 27, 2023, MK was at Northwood and in his physical education class. MK was sitting with a classmate or two - he was talking during class. Mr. Keith Doody the Physical Education teacher at Northwood, called MK by name, telling MK to get away from "those kids", that he was "aware of what you have been up to" and that he was "in enough trouble". MK, shocked and humiliated by Mr. Doody began to cry.  Upon seeing the tears that Mr. Doody inspired, he told MK to leave the class and sit in the hallway, alone. Upon information and belief, the removal of a student from class to sit in a hallway alone is a breach of policy and procedure of the district. Upon information and belief, the verbal beratement of a 9-year-old student by a teacher in the presence of other students of alleged, unverified allegations is a breach of policy and procedure of the district. MK at the conclusion of his physical education class requested to see the school social worker, but she was out for the day. On Friday October 27, 2023, MK arrived

home after school and was inconsolable. He recounted the events to his parents. Mrs. Klimkowski went to the school to see Principal Basom-Keller. Mrs. Klimkowski arrived at Northwood around 4:00 p.m., after student dismissal but prior to the administrative offices closing. Plaintiff Klimkowski waited, locked outside the office.  Plaintiff Klimkowski repeatedly knocked on the door of the office and repeatedly rang the bell of the office.   Principal Bascom-Keller was in the office and ignored her. A custodian for the school finally opened the office door. Principal Bascom Keller emerged from her office and told Mrs. Klimkowski she did not have time to meet with her. Plaintiff Klimkowski asked her repeatedly about Mr. Doody humiliating MK in class, leaving him alone and crying in the hallway. The plaintiff was visibly upset, her voice was raised, and she was angry. Principal Bascom-Keller told Mrs. Klimkowski to leave.  Mrs. Klimkowski did leave.  The entire verbal incident took place in the school office, behind a closed, locked door after student dismissal.

At approximately 4:30 p.m., on Friday October 27, 2023, three squad cars from the Royal Oak Police Department arrived at Plaintiff's home.  The Klimkowski's and their three children were home, including MK. The officers informed the Klimkowski family that an Order of Trespass was issued against them by the Royal Oak School District and that their family was not to attend

the "Trunk or Treat" public event at Northwood Elementary that evening. The event was open to the public.   The Klimkowski's were informed that their appearance at Northwood that evening would result in their arrest. The officers stated that the district had issued a no trespass order against Mrs. Klimkowski and that she was not permitted at Northwood Elementary for a calendar year and that she would be arrested if she appeared at the school. Counsel for the Klimkowski's called the Royal Oak Police Department and was informed by the lieutenant on duty at 5:30 p.m., Friday October 27, 2023 that in fact the no trespass was requested by the Superintendent's Office and was issued for all Royal Oak District property/schools and Mrs. Klimkowski was not welcome on ANY Royal Oak District property/schools until such time as the issue was addressed by the Board, or in the appropriate legal forum. The lieutenant further indicated that Mrs. Klimkowski would receive written notice of the same 'by Tuesday, or so'.  The Klimkowski family did not attend the event at Northwood Friday October 27, 2023, which, again, was open to the public, for fear of being arrested in front of their children.

Plaintiff Klimkowski was forced to cancel her appointment with the school social worker for Monday, October 30, 2023. The appointment was to discuss the events of the 20th of October and how to rectify the situation, and

how to assist MK, given the nature of the allegations. Plaintiff made the appointment on or about October 26, 2023. On Monday October 30, 2023, MK was not in school as he was terrified by the verbal assault of Mr. Doody and the three police cars at his home 3 days prior, telling him that his family was not welcome at school. MK is 9 years old, in the fourth grade, qualifies for Special Education and has a 504 Plan. MK is also currently undergoing evaluation and testing for an Individualized Education Plan, or IEP. An IEP requires parental cooperation with the administration at Northwood, the school social worker, MK's teachers and the Psychologist for the district.

On Monday October 30, 2023, counsel for Plaintiff contacted the School Board President, the Superintendent and the Executive Director of Staff and Student Affairs requesting a meeting to address the issues concerning Northwood Elementary and the threat of a No Trespass Order. (See Exhibit A – Letter on Behalf of Plaintiff) The request from Plaintiff for a meeting was ignored and the Superintendent's Office, through the Executive Director Wolinsky issued, via email to the Plaintiff a no trespass notice/order Dated October 31, 2023, to Plaintiff which states:

***"The purpose of this letter is to notify you that effective immediately you are prohibited from being on Northwood Elementary and Royal Oak School District Property. If you are on Northwood Elementary or Royal Oak School District Property without prior consent, a complaint of trespassing will be filed with the Royal Oak Police Department. This decision is in response to your behavior in the Northwood Elementary***

*School Main Office on Wednesday, October 25, 2023 and again on Friday, October 27, 2023.*

*You are allowed to drop off and pick up your child at one of the street crosswalks leading to Northwood Elementary. Any meetings that you will attend on behalf of your child at Northwood will be scheduled at the Royal Oak Schools Board of Education Office at the above address. You are allowed to enter and exit Adams Elementary School for the sole purpose of matters pertaining to your child enrolled in that school."*

The No trespass order/notice from Defendants carves out two narrow exceptions only, one for meetings regarding MK at the District Offices when scheduled and second for GK, at Adams 'for the sole purpose of matter's pertaining to your child enrolled'. The notice/order on its face is overly broad and vague. (See Exhibit A – No Trespass Order from Royal Oak Public Schools 10/31/2023) There is no expiration date for the no trespass notice/order and no process to challenge the order, which runs afoul of procedural due process. (See Exhibit A – No Trespass Order from Royal Oak Public Schools 10/31/2023) The no trespass order threatens police action and retaliation against Plaintiff under the Michigan no trespass law specifically MCL 750.552 which prohibits Plaintiff to (1)(a) Enter the lands or premises of another without lawful authority after having been forbidden to do so by the owner or occupant or the agent of the owner or occupant. Counsel for the Plaintiff emailed Defendant Wolynski regarding whether the notice/order/letter of no trespass was the final determination of the district.

8

Counsel received no response from Defendants. See Exhibit B – Email to ROS/Wolinsky 10/31/2023.

On November 1, 2023, counsel for Plaintiff again wrote to the district requesting redresses for Plaintiff and a meeting for MK regarding Northwood. Counsel received an email from Defendant Royal Oak Schools counsel indicating the district would not meet, but that Plaintiff could meet with the district regarding Mr. Keith Doody and her no trespass order. Defendants to date have not produced any legal authority for the issuance of their no trespass order and further have not responded to repeated requests for due process/redress of the order and have failed to provide any opportunity for Plaintiff to contest the order/notice of no trespass.

Defendants have not proffered any administrative, school or district rule, and/or code that was allegedly violated by the Plaintiff. Any purported basis for the no trespass order stems from October 25, 2023 when Plaintiff demanded to inspect MK's student file under the authority of Federal Law, or Friday October 27, 2023 when she yelled at Principal Bascom Keller who allowed her teacher Keith Doody to humiliate MK in front of his classmates, make inuendo of misconduct by MK (which is unsubstantiated) and further allowed Doody to place an emotionally wrought 9 year old in a hallway unsupervised as punishment.

The Defendants cannot substantiate any physical threat, implication of any threat of violence, the violation of any law or other conduct by Plaintiff to impose such a broad, vague, and unconstitutional ban. Defendants no trespass order does not allege any specific act/omission by Plaintiff and is not grounded in any safety concerns. That the no trespass order issued against the Plaintiff is an abuse of authority by the Defendants and the Defendants knew that the action of issuing the no trespass order was unconstitutional, retaliatory and the intent was to injure the reputation of the Plaintiff. The blanket, interminable ban of the Plaintiff from "all district property" deprives Plaintiff of the following rights including but not limited to: Plaintiff is prohibited from voting Tuesday November 7, 2023, or any other election day thereafter. Plaintiff's polling location is Northwood Elementary, and she is a registered voter. The order from 10/31/23 has no expiration date or effective time. Plaintiff may not attend any public or quasi-public meeting including School Board Meeting which are held monthly. Although the district attempted to back track on this, they have not issued a revised notice. Plaintiff may not attend PTA meetings, which are quasi-public. Plaintiff may not attend any District Function open to the public such as Trick or Treat, this past Friday, Pottery for Families this November 15, 2023, the 4th Grade Music Concert on December 12, 2023, are some examples. Plaintiff may not

attend Parent Teacher Conferences scheduled for November 2023. Plaintiff who is the primary parent who sees to the education of MK cannot meet or attend appointments with MK at school while he is evaluated for special education and an IEP. Plaintiff cannot deliver medicine to MK at school. Plaintiff cannot respond to any medical emergency for MK at school. Plaintiff cannot retrieve MK from school for an emergency. Plaintiff has been effectively removed from being able to participate in MK's education, which is a substantive due process violation.

Defendants rely upon the language of "meetings will take place at the District Offices for MK.  However, when Plaintiff attempted to set up a meeting at the district offices with Northwood Elementary's social worker, this week, Plaintiff received an email asking, "what the meeting was for". Therefore, Plaintiff will have to have a "reason" for meeting, and they are free to say no.

## ANALYSIS

Plaintiff Klimkowski seeks a temporary restraining order against Defendants Royal Oak Schools, its superintendent FITZPATRICK, and Executive Director of Staff and Student Affairs, WOLYNSKI. A temporary restraining order, which can be issued without notice to the adverse party, is meant to preserve the status quo until a court can make a reasoned

11

resolution of a dispute. F.R.C.P. 65(b)(1); Procter & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 226 (6th Cir. 1996). Here, the Defendants are on informal notice, as the verified complaint was emailed as a courtesy along with a copy of the Motion for a TRO and this memorandum in support of a TRO shortly after Plaintiff's filing.

Plaintiff's request for a TRO is an extraordinary and drastic remedy and not awarded as a matter of right. Am. Civil Liberties Union Fund of Michigan v. Livingston Cty., 796 F.3d 636, 642 (6th Cir. 2015). In determining whether to grant such an order, courts evaluate four factors: 1) whether the movant has a strong likelihood of success on the merits; 2) whether the movant would suffer irreparable injury absent an injunction; 3) whether granting the injunction would cause substantial harm to others; and 4) whether the public interest would be served by granting the injunction. Ne. Ohio Coal. for Homeless and Serv. Emps. Intern. Union, Local 1199 v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006). These four factors "are not prerequisites that must be met but are interrelated considerations that must be balanced together. For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay." Id.

In this instance Plaintiffs' motion raises a high risk of irreparable injury as she is precluded from entering her polling station on November 7, 2023, and thereby deprived of her right to vote. This restraint is presumptively unconstitutional and calls into question the overly broad No Trespassing Order in its entirety.  Plaintiff is likely to succeed on the merits of her First Amendment claim, and the overwhelming public interest favors the issuance of a Temporary Restraining Order to protect the Plaintiff, Klimkowski.  The irreparable injury Plaintiff is likely to experience is the denial of her right to vote, assemble, speak, and participate in the educational upbringing of her children. Klimkowski is likely to experience irreparable injury absent a TRO, in the form of an invasion and restraint upon her constitutional rights. See Obama for Am. v. Husted, 697 F.3d 423, 436 (6th Cir. 2012), which states "When constitutional rights are threatened or impaired, irreparable injury is presumed."

Conversely, the existing case law and decisions from other Districts/Circuits provide no authority for Defendants to prevail.  See Memorandum of Opinion and Order, Cyr v Addison Rutland Supervisory Union File No. 1:12-cv-00105-jgm, (2013), See Memorandum and Order, Coffelt v Omaha School District, Et. Al, File No. 3:17-cv-1301-TBL (2018) and Memorandum and Order, Worthley v School Committee of Gloucester

Et. Al., File No. 1:22-cv-12060-DJC. (2023).  Each of these cases, like Plaintiff here involve a school district issuance of a No Trespass Order which was struck down by the Courts.  The facts vary, but what is notable is that the facts in this case pale in comparison to circumstances where a no trespass orders have been upheld and further closely mirror the facts of the above cited opinions and orders above which struck down by the Courts. Plaintiff has attached Memorandum of Opinion and Order, Cyr v Addison Rutland Supervisory Union File No. 1:12-cv-00105-jgm, (2013) in support of the issuance of the TRO, specifically as to the strong likelihood that Plaintiff will prevail on the merits of her complaint. (See Exhibit C - Cyr v Addison Rutland Supervisory Union File No. 1:12-cv-00105-jgm, (2013))

A TRO would further place the Plaintiff in the position she was in prior to 10/27/2023 when the police arrived at the behest of Defendants and banned her indefinitely from all district property.  The TRO further places MK in a position prior to 10/27/2023 and allows for MK to have an effective and present parent advocate during a difficult and highly charged beginning to a school year.

## REQUESTED RELIEF

WHEREFORE, Plaintiff Klimkowski requests a Temporary Restraining

Order pursuant F.R.C.P. 65(b) against the Defendants, Royal Oak School, its superintendent, Fitzpatrick and Executive Director, Wolinsky prohibiting the enforcement of their 10/31/2023 No Trespass Order and prohibiting the issuance of additional No Trespass Orders against the Plaintiff, Courtney Klimkowski, until such time as a full hearing may held on the matters raised in Plaintiff's verified complaint.

Respectfully Submitted,

/s/Karyn L. Macdonald
KARYN L. MACDONALD 60045
Law Office of Karyn L. Macdonald
10 South Main Street, Suite 305
Mt. Clemens, MI 48043
586-465-6000 586-465-0126 Facsimile
Klmacdonald60045@yahoo.com

Dated: November 3, 2023



**ROYAL OAK SCHOOLS**
A COMMUNITY OF EXCELLENCE

Royal Oak Schools
800 Devillen Ave.
Royal Oak, MI 48073
(248) 435-8400

Oct 31, 2023

Courtney Klimkowski

Dear Mrs. Klimkowski,

The purpose of this letter is to notify you that effective immediately you are prohibited from being on Northwood Elementary and Royal Oak School District Property. If you are on Northwood Elementary or Royal Oak School District Property without prior consent, a complaint of trespassing will be filed with the Royal Oak Police Department. This decision is in response to your behavior in the Northwood Elementary School Main Office on Wednesday, October 25, 2023 and again on Friday, October 27, 2023.

You are allowed to drop off and pick up your child at one of the street crosswalks leading to Northwood Elementary. Any meetings that you will attend on behalf of your child at Northwood will be scheduled at the Royal Oak Schools Board of Education Office at the above address. You are allowed to enter and exit Addams Elementary School for the sole purpose of matters pertaining to your child enrolled in that school.

If you have any questions, you may contact me at (248) 435-8400 ext. 1211.

Sincerely,

Patrick Wolynski, Executive Director
Staff and Student Services
Royal Oak Schools

Cc:     Molly Bascom-Keller, Principal, Northwood Elementary School
        Officer Lipscomb, Royal Oak Police Department

Exhibit B - Email ROS Wolynski

Letter of 10/31/2023 Courtney Klimkowski/Northwood Elementry

From:  Karyn Macdonald (klmacdonald60045@yahoo.com)

To:  ███████ @royaloakschools.org

Date:  Tuesday, October 31, 2023 at 12:10 PM EDT

Mr. Wolynski,

I wrote to you yesterday in the hope that the District/Administration would elect to meet with myself and my client's prior to taking action   I was also hopeful that I would hear from the District/Administration regarding my letter which was sent yesterday, and the notice of no trespass letter furnished to Mrs. Klimkowski via email today

I am trying to verify that the attached letter to Mrs. Klimkowski is the District/Administrations final decision on the matters outlined in my correspondence from yesterday (also attached)   Any guidance from your office would be appreciated.  Thank you and I remain...

Very truly yours, Karyn L  Macdonald

*Karyn L. Macdonald*
*Towne Square Building One*
*10 South Main Street, Suite 305*
*Mt. Clemens, MI 48043*

*586/465-6000  Facsimile 586/465-0126*
*Mobile 248-259-5543*
*email: klmacdonald60045@yahoo.com*

PRIVILEGED AND CONFIDENTIAL - SUBJECT TO THE ATTORNEY CLIENT PRIVILEGE AND ATTORNEY WORK PRODUCT PROTECTION

Thi  email i  intended for the de ignated recipient( ) only, and may be confidential, non public, proprietary, protected by the attorney/client or other privilege.  Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful.  Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection.  If you are not the intended recipient or if you believe that you have received this email in error, plea e notify the  ender immediately and delete all copie  from your computer  y tem without reading,  aving, or using it in any manner.  Although it has been checked for viruses and other malicious software (*malware*), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects.  All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or u e of thi  email i  e pre  ly di claimed

 Trespassing Letter Dated Oct. 31, 2023.pdf
446kB

 letter and fax confimation.pdf
1 1MB

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

|  |  |  |
|---|---|---|
| MARCEL CYR, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | File No. 1:12-cv-00105-jgm |
| | : | |
| ADDISON RUTLAND SUPERVISORY UNION, | : | |
| | : | |
| Defendant. | : | |
| Type text here | : | |

**MEMORANDUM AND ORDER**
(Doc. 25.)

I.    Introduction

The defendant in this civil rights action, the Addison Rutland Supervisory Union ("ARSU"), has filed a partial motion to dismiss.  (Doc. 25.)  The ARSU seeks to dismiss the claims of the plaintiff, Marcel Cyr, on the grounds that: (1) he possesses no First Amendment rights with respect to school property; (2) he possesses no liberty or property interest in accessing school property under the Fourteenth Amendment; and (3) the remainder of his Fourteenth Amendment claim duplicates his First Amendment claim.  Id. at 1-2.  Mr. Cyr has opposed this relief.  (Doc. 30.)  The ARSU has filed a reply.  (Doc. 31.)  As set forth below, the ARSU's motion to dismiss is granted in part and denied in part.

II.    Factual Background

At this procedural stage, the Court takes the allegations in the Amended Complaint as true and outlines the relevant facts accordingly.

Mr. Cyr and his spouse ("the Cyrs") have a son and a daughter, who have both attended the Benson Village School ("BVS").  (Doc. 22 at ¶¶ 9, 11.)  The Cyrs' children have suffered assaults

Dockets.Justia.com

and harassment on BVS property.  Id. at ¶¶ 9-11.  Their son also has a significant learning disability.

Id. at ¶ 9.  The Cyrs have complained to school officials, as well as the Vermont State Police, about

these challenges.  Id. at ¶¶ 10-11.  They have also criticized the special education and student

harassment policies and practices at the BVS and advocated for changes to them.  Id. at ¶ 12.  The

BVS is part of the Addison Rutland Supervisory Union ("ARSU").  Id. at ¶ 5.

In addition to complaining to school officials, the Cyrs have offered their views to elected

officials at school board meetings.  Id. at ¶¶ 10, 13.  These meetings also allow them to stay

informed about school business.  Id. at ¶ 13.  As part of these advocacy efforts, Mr. Cyr has spoken

during the public comment portion of school board meetings; distributed printed material critical of

school policies and educational test results; emailed his views to friends and acquaintances; displayed

yard signs advocating for the defeat of the school budget; and posted public comments critical of

the school principal during a school strike.  Id. at ¶ 15.

The BVS issued a notice against trespass[1] barring Mr. Cyr from school property in

September 2011.  Id. at ¶ 19.  The notice contained no information about why the BVS had banned

him.  Id. at ¶ 20.  Nor did it provide any information about how Mr. Cyr could contest the ban.  Id.

at ¶ 21.  Following an investigation by Vermont Legal Aid, Mr. Cyr learned the BVS had issued the

notice because he had honked his car horn in the school parking lot.  Id. at ¶ 18.  He did so in an

attempt to attract the attention of one of his children's favorite staff members.  Id. at ¶ 22.  The BVS

rescinded the notice about two weeks after its issuance.  Id. at ¶ 23.

---

[1] While the ARSU refers to the notices as "notices against trespass" in its pleadings (Doc. 25 at 1), the Amended Complaint describes them as "no trespass orders."  (Doc. 22 at ¶ 19.)  A notice attached to the Amended Complaint resolves this conflict, as it is entitled "notice against trespass." (Doc. 22-1 at 1.)

2

The ARSU served Mr. Cyr with a second notice against trespass in March 2012.  Id. at ¶ 24. The notice bars Mr. Cyr from any school property in the entire supervisory union for two years.  Id. at ¶ 25.  The ARSU served the notice during a series of meetings to evaluate an educational plan for Mr. Cyr's son.  Id. at ¶ 24.  According to the BVS, Mr. Cyr had not sufficiently complied with its demands during these meetings.  Id.  Just as with the September 2011 notice, the March 2012 notice provides no information about either the basis for the ban or opportunities to contest it.  Id. at ¶ 27; Doc. 22-1 at 1.  The ARSU issued the trespass notice pursuant to 13 V.S.A. § 3705(a), which makes it a crime to enter property in violation of a notice against trespass.  Doc. 22 at ¶ 26.

When Mr. Cyr contacted the ARSU about the March 2012 notice, the ARSU informed him it had received a tip he posed a danger to the schools.  Id. at ¶ 28.  The ARSU refused to disclose the basis for the tip.  Id. at ¶ 29.  Mr. Cyr made multiple attempts to contest the notice against trespass.  Id. at ¶ 30.  The ARSU refused to provide him with an opportunity to contest the notice unless he agreed to undergo a psychiatric evaluation, with the results furnished to the ARSU.  Id. at ¶ 31.

In search of more information about the ban, Mr. Cyr submitted a public records request to the ARSU.  Id. at ¶ 33.  Instead of complying with this request, the ARSU sued Mr. Cyr in Vermont Superior Court, seeking a declaration that it need not disclose the information.  Id. at ¶ 35.  As a counterclaim, Mr. Cyr asserted a violation of the public records act in Vermont.  Id.  He ultimately prevailed on his counterclaim and obtained the records.  Id. at ¶ 36.  Mr. Cyr learned the ARSU based its trespass ban on a letter written by a psychologist.  Id.  She had never met Mr. Cyr, wrote the letter at the ARSU's request, and relied on discussions with school employees.  Id.

Mr. Cyr asserts First and Fourteenth Amendment violations in the Amended Complaint. His first count claims the trespass ban "impermissibly burdened his ability to express himself, obtain information, and participate in the political process" in violation of the First Amendment.  Id. at ¶ 38.  His second count alleges a violation of the Fourteenth Amendment's guarantee of procedural due process.  Id. at ¶ 39.  It claims the ARSU issued trespass notices "in a way that creates a high risk of the erroneous deprivation of rights" and that one of these notices deprived him of "his rights without notice or a meaningful opportunity to be heard."  Id.  Mr. Cyr seeks a declaration that the ARSU has violated his constitutional rights and damages for these violations.  Id. at ¶ 40.  He also seeks to enjoin the ARSU from enforcing the March 2012 notice against trespass and from issuing future notices without sufficient process.  Id.

III.    Discussion

1.    Standard of Review

A motion to dismiss tests the legal rather than the factual sufficiency of a complaint.  See, e.g., Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000).  A court should grant a motion to dismiss only if the pleader fails to show a "plausible entitlement to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007).  A court accepts the facts alleged in the pleading as true, draws all reasonable inferences in favor of the pleader, and dismisses only "if the facts as alleged are insufficient to raise a right to relief above the speculative level."  Price v. N.Y. State Bd. of Elections, 540 F.3d 101, 107 (2d Cir. 2008) (internal quotations omitted).  A complaint must state a plausible–not just possible–claim for relief to survive a motion to dismiss.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  Determining whether a complaint survives a motion to dismiss requires the court to make a "context-specific" analysis and "draw on its judicial experience and common sense."  Id. at 679.

4

2.      Access to School Property Generally

      A.      First Amendment Right to Access

The ARSU has moved to dismiss the Amended Complaint "[t]o the extent [it] suggests that the notice against trespass violates Mr. Cyr's First and Fourteenth Amendment rights relative to school property generally and asks the Court to declare the notice against trespass a nullity and enjoin enforcement of the notice in its entirety." (Doc. 25 at 1.)  The ARSU does not dispute that Mr. Cyr has a First Amendment right to attend public meetings on school property, including the school board meetings at issue here.  Id. at 5, 12.  Nor does it dispute that he might possess a liberty or property interest under the Fourteenth Amendment in attending such meetings.  See id. at 1-2, 10-11.  The ARSU seeks instead to establish that Mr. Cyr is not entitled to "unfettered access" to school property, thereby narrowing his lawsuit to claims concerning his attendance at public meetings only.  Id. at 3.

Mr. Cyr responds that the ARSU has infringed his First Amendment rights to free expression and to receive information.  (Doc. 30 at 4-5.)  He asserts the notice against trespass created a "First-Amendment-Free Zone," applicable only to him, as it forbids his attendance at public meetings and expression on school grounds, including parking lots.  Id. at 4-5, 11-12.  Mr. Cyr contends the trespass notice violated his First Amendment rights and, further, that these rights constitute liberty interests for procedural due process purposes.  Id. at 4-5, 12-13.  Significantly, Mr. Cyr has not asserted a general right to access school property in his opposition.  His claims rest on allegations the ARSU restricted his First Amendment rights through the notice against trespass.  Mr. Cyr states in his opposition that he makes no claim the ARSU should provide him access to his children's classrooms.  Id. at 11.

"The Constitution does not guarantee unlimited freedom to speak on government property." Bronx Household of Faith v. Bd. of Educ. of N.Y., 492 F.3d 89, 97 (2d Cir. 2007). The level of scrutiny applied to speech restrictions on government property depends on the nature of the forum in which it occurs. Id. The Supreme Court has established four categories of fora for expression "that, correspondingly, fall along a spectrum of constitutional protection." Id. (internal quotations omitted).

Traditional public fora lie at one end of this spectrum. Id. The government cannot exclude speakers from "traditional public fora–streets, parks, and places that 'by long tradition . . . have been devoted to assembly and debate'"–unless the exclusion is narrowly tailored to serve a compelling state interest. Id. (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45-46 (1983)). This same level of scrutiny applies to a "designated public forum," which the government intentionally designates as "a place or means of communication as a public forum." Id. (internal quotations omitted). The government creates a limited public forum by designating "a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." Id. (internal quotations omitted). Reasonable, viewpoint-neutral rules may govern the content of speech in a limited public forum. Id. Lastly, at the other end of the spectrum, lie nonpublic fora. Id. The government may exclude speech in a nonpublic forum–one that neither tradition nor designation opens to the public for communication–through "reasonable content-based restrictions so long as these do not suppress expression merely because public officials oppose the speaker's view." Id. (internal quotations omitted).

Instead of applying this framework to the public school property at issue here, the ARSU contends members of the public lack any constitutionally protected interest or right in accessing

school property generally.  (Doc. 25 at 1.)  The ARSU cites to numerous decisions in support of this blanket rule.  Id. at 5-9; Doc. 31 at 2-3.  It is clear a public school has a compelling interest in maintaining order and ensuring safety on its grounds.  Lovern v. Edwards, 190 F.3d 648, 655-56 (4th Cir. 1999).  These interests, in turn, may justify constitutional infringements, including restrictions on the First Amendment rights of parents and other members of the public.  Id. (father's history of aggressive conduct towards school employees justified trespass ban); Cunningham v. Lenape Reg'l High Dist. Bd. of Educ., 492 F. Supp. 2d 439, 450-51 (D.N.J. 2007) (father "cannot hide behind the protections of the First Amendment to harass and bully the faculty and staff").  Indeed, "school officials have broad discretion in restricting visitors on school property to protect the safety and welfare of the school children."  Embry v. Lewis, 215 F.3d 884, 889 (8th Cir. 2000).  But there is no categorical rule that the interests of a school in safety and order always outweigh constitutional rights.  See id.  Members of the public retain First Amendment rights with respect to school property, but only to a limited extent.  See Travis v. Owego-Apalachin Sch. Dist., 927 F.3d 688, 691-93 (2d Cir. 1991).  As discussed below, however, they do not possess a liberty or property interest in accessing school property for procedural due process purposes.

The Court declines the ARSU's invitation to carve out public school property from the public forum framework.  As this case proceeds forward, the need for safety and order on school grounds will by no means be irrelevant.  In fact, the ARSU justifies the notice against trespass on the grounds that it received "an unsolicited warning from an independent psychologist that, in her professional opinion, Mr. Cyr's conduct . . . presented a high risk of danger."[2]  (Doc. 31 at 1 n.1.) Mr. Cyr's conduct may ultimately provide a sufficient justification for issuing the trespass notice

---

[2]  Mr. Cyr disputes the veracity of this warning.  He alleges the ARSU requested the "tip letter" from the psychologist, who drafted it in consultation with the ARSU's lawyer.  (Doc. 22 at ¶¶ 36-37.)

under the public forum framework.[3]  See Bronx Household of Faith, 492 F.3d at 97.  To the extent

Mr. Cyr alleges interference with his speech rights on school property, including school parking lots,

the motion to dismiss is denied.  See Grattan v. Bd. of Sch. Comm'rs of Baltimore City, 805 F.2d

1160, 1162-63 (4th Cir. 1986) (applying framework to union solicitation activities in public school

parking lot).  The motion to dismiss is granted, as to access to school classrooms, in light of Mr.

Cyr's statement that he makes no claim about access to them.  (Doc. 30 at 11.)

        B.     Liberty Interest in Access

The ARSU has moved to dismiss Mr. Cyr's procedural due process claim to the extent it

relies on a liberty or property interest in accessing school property generally.  A procedural due

process claim requires proof of two elements: "(1) the existence of a property or liberty interest that

was deprived and (2) deprivation of that interest without due process."  Bryant v. N.Y. State Educ.

Dept., 692 F.3d 202, 218 (2d Cir. 2012).  These elements derive from the Due Process Clause of the

Fourteenth Amendment, which prohibits the deprivation of "life, liberty, or property, without due

process of law."  U.S. Const. amend. XIV, § 1.

Mr. Cyr does not contend the ARSU deprived him of a property interest.  (Doc. 30 at 13.)

Rather, he contends the ARSU deprived him of a liberty interest–his First Amendment rights of free

expression and to receive information.[4]  Id.  The ARSU has not challenged whether procedural due

---

    [3] The level of justification necessary for the notice against trespass may differ between the school board meetings and school grounds, which likely fall into different fora categories on the spectrum.  Compare Jones v. Bay Shore Union Free Sch. Dist., No. 12-cv-4051, 2013 WL 2316643, at *6 (E.D.N.Y. May 28, 2013) (a school board meeting is typically a limited public forum) with Pearlman v. Cooperstown Cent. Sch. Dist., No. 3:01-cv-504, 2003 WL 23723827, at *5 (N.D.N.Y. June 11, 2003) (a school is a non-public forum during school hours).

    [4] The Amended Complaint alleges, in general terms, that the ARSU deprived Mr. Cyr of "his rights."  (Doc. 22 at ¶ 39.)  Mr. Cyr clarified in his opposition that he alleges a liberty interest in his First Amendment rights.  (Doc. 30 at 13.)

process protects such a broad liberty interest.  (Doc. 31 at 2-3.)  Nor has it challenged whether speech at a school board meeting also enjoys procedural protections.  Id.  The ARSU instead challenges whether Mr. Cyr has stated a liberty interest in accessing school property generally.  (Doc. 25 at 7.)  The ARSU is correct that Mr. Cyr lacks such an interest.

The range of liberty interests protected by procedural due process is not infinite.  Bd. of Regents v. Roth, 408 U.S. 564, 570 (1972).  A liberty interest may arise from two sources: "(1) the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or . . . (2) an expectation or interest created by state laws or policies."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (numerals added).  Mr. Cyr has not identified a Vermont state law or policy that provides him with a liberty interest in accessing school property.  As the ARSU points out, many courts have ruled parents and other third-parties lack a constitutionally protected interest in such access.  See Hannemann v. S. Door Cnty. Sch. Dist., 673 F.3d 746, 755-56 (7th Cir. 2012); Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ., 42 F.3d 719, 724 (2d Cir. 1994) (school board member lacked "unrestricted right to enter the school classrooms or hallways during school hours"); Ritchie v. Coldwater Cmty. Sch., No. 1:11-cv-530, 2012 WL 2862037, at *16 (W.D. Mich. July 11, 2012); Justice v. Farley, No. 5:11-cv-99, 2012 WL 83945, at *3 (E.D.N.C. Jan. 11, 2012); Martin v. Clark, 3:10-cv-1500, 2010 WL 4256030, at *2 (N.D. Ohio Oct. 21, 2010); Cwik v. Dillon, No. 1:09-cv-669, 2010 WL 5691404, at *6 (S.D. Ohio Sept. 20, 2010); Pearlman, 2003 WL at *3.  The Court finds these decisions persuasive.  Indeed, while they possess a constitutional right to direct the education of their children, parents do not possess a liberty interest in unfettered access to school property.  Justice, 2012 WL at *3.

To the extent Mr. Cyr asserts a liberty interest in accessing school property generally, his procedural due process claim is dismissed.  This ruling narrows his procedural due process claim.  It

is not dismissed in its entirety.  Mr. Cyr may continue to assert the ARSU, by issuing the notice

against trespass, deprived him of First Amendment rights without sufficient process.  However, he

cannot assert he possesses a liberty interest–independent of the First Amendment–in accessing

school property.

        3.     Adequacy of Process

The ARSU contends the notice against trespass provided Mr. Cyr with adequate process for

due process purposes.  (Doc. 25 at 9-10.)  The Amended Complaint alleges the ARSU received a tip

from a psychologist that Mr. Cyr posed a danger to the schools; the ARSU issued a trespass notice

in response; and any opportunity to contest the notice required Mr. Cyr to first undergo a psychiatric

evaluation, with the results provided to the ARSU.  Relying on its communications regarding the

psychiatric evaluation, the ARSU contends Mr. Cyr "cannot claim that he did not have notice of

why [the notice of trespass] was issued or an opportunity to challenge [it]."  (Doc. 25 at 10.)  This

argument is not especially developed.  It also appears only to address the March 2012 trespass notice

and not the September 2011 notice.  See id.

To determine whether the ARSU afforded Mr. Cyr adequate process, "it is necessary to ask

what process the [ARSU] provided, and whether it was constitutionally adequate."  Rivera-Powell v.

N.Y. City Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006).  As part of this analysis, "the Supreme

Court has distinguished between (a) claims based on established state procedures and (b) claims

based on random, unauthorized acts by state employees."  Id. (internal quotations omitted).  A

meaningful post-deprivation remedy automatically satisfies deprivations caused by random,

unauthorized acts.  Id. at 465-66.  This rule recognizes that state and local governments cannot

predict when such deprivations will occur.  Id. at 465.  For deprivations based on established state

procedures, a court must balance the three factors identified in Mathews v. Eldridge, 424 U.S. 319

(1976), to determine the process due.

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through
> the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute procedural
> requirement would entail.

Id. at 335.  To be sure, application of the Mathews test may only require a meaningful, post-

deprivation remedy.  See Nnebe v. Daus, 644 F.3d 147, 158-59 (2d Cir. 2011) (no pre-deprivation

hearing necessary to suspend taxi driver following arrest).  A post-deprivation remedy is just not

adequate ipso facto.  See Rivera-Powell, 470 F.3d at 465.

Mr. Cyr applies the Mathews test in his opposition, and the ARSU has not objected to its

application in its reply.  At least for now, the Court will assume its applicability.  Taking the facts in

the Amended Complaint as true, the Mathews test weighs in favor of Mr. Cyr.  The Court is mindful

that his interest in exercising his First Amendment rights on school grounds is not particularly

strong.  He is still free to express his opinions, just in different forums.  See Int'l Caucus of Labor

Comm. v. Maryland Dep't of Transp., Motor Vehicle Admin., 745 F. Supp. 323, 329-30 (D. Md.

1990).  He has a stronger interest in attending school boarding meetings.  For both interests,

however, the process afforded him is minimal, at best.  The March 2012 trespass notice did not

inform Mr. Cyr of any procedure for contesting its issuance.  Rather, in response to inquiries from

Mr. Cyr, the ARSU informed him that he could not contest the notice unless he underwent a

psychiatric evaluation.  Cf. Catron v. City of St. Petersburg, 658 F.3d 1260, 1268-69 (11th Cir. 2011)

(trespass ordinance that lacked an appeal process is procedurally inadequate).  Process contingent on

such an intrusion creates a substantial risk Mr. Cyr will decline to contest the notice.  That the notice

11

did not notify Mr. Cyr of any procedure for contesting it further compounds this risk.  A significant

governmental interest must therefore justify the trespass ban.  But the only governmental interest

identified in the Amended Complaint is a tip from a psychologist who had never met Mr. Cyr.  The

basis for the psychologist's belief that Mr. Cyr "posed a danger to the schools" is unsubstantiated.[5]

(Doc. 22 at ¶ 28.)  Weighing the three Mathews factors–"the private interest, the risk of erroneous

deprivation, and the government's interest"–the Court is unable to conclude the ARSU provided

Mr. Cyr with adequate process.  Nnebe, 644 F.3d at 158.

The ARSU also asserts it complied with 13 V.S.A. § 3705, which does not require property

owners to list the reason for the issuance of the notice or to provide for an appeal process.  Absent a

separate right under the statute, the ARSU contends Mr. Cyr is not entitled to additional notice or

process.  This argument is unavailing.  Because the amount of process due is a constitutional

determination, state law does not define its parameters.  See Mathews, 424 U.S. at 334-35.

In addition, the ARSU contends property owners need not provide a hearing because a

notice against trespass does not invite a factual dispute.  Relying on Pietrangelo, II v. Alvas Corp.,

5:09-cv-68, 2010 WL 3323701 (D. Vt. May 19, 2010), aff'd sub nom., 487 F. App'x 629 (2d Cir.

2012), the ARSU asserts "[p]roperty owners may bar others from their properties without stating a

reason or even having one, and a notice against trespass is simply one form of informing an

individual that he or she is not welcome."  Doc. 25 at 9 (quoting Pietrangelo, II, 2010 WL at *4).

The trespass notice in Pietrangelo, II barred the plaintiff from entering a privately-owned

delicatessen.  The notice contrasts with the one here, which barred Mr. Cyr from accessing public

_____

[5] In its motion to dismiss, the ARSU explains the psychologist raised concerns about
potential violence against its employees.  See Doc. 25 at 2; Collins v. Univ. of N.H., 664 F.3d 8, 18
(1st Cir. 2011) (university's strong interest in "order and safety" justified trespass ban without pre-
deprivation hearing).  At this early stage, however, the Court only evaluates the allegations in the
Amended Complaint.

property.  The Constitution requires a different analysis with respect to public property.  See Catron, 658 F.3d at 1268-69.

    4.    <u>Graham</u> Rule

The ARSU has moved to dismiss Mr. Cyr's Fourteenth Amendment claim as duplicative of his claims under the First Amendment.  (Doc. 25 at 10.)  Although recognizing he states a First Amendment claim based on his exclusion from the school board meetings, the ARSU contends Mr. Cyr cannot premise his First and Fourteenth Amendment claims on the same conduct.  <u>Id.</u> at 11-12. Mr. Cyr responds that the ARSU has confused procedural due process with substantive due process. (Doc. 30 at 13-14.)  He acknowledges that a civil rights claimant cannot sustain a substantive due process claim where another constitutional provision affords explicit protection.  <u>Id.</u> at 13-14.  For procedural due process claims, however, Mr. Cyr contends this rule is inapplicable.  <u>Id.</u>  The courts have referred to this rule as the "<u>Graham</u> rule."

Mr. Cyr may allege free speech and procedural due process claims.  He is correct that the <u>Graham</u> rule only applies to substantive due process claims.  Although substantive and procedural due process both derive from the Due Process Clause of the Fourteenth Amendment, these concepts protect different, yet related, constitutional guarantees.  Substantive due process "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."  <u>Zinerman v. Burch</u>, 494 U.S. 113, 125 (1990) (internal quotations omitted).  It is also the basis for protecting fundamental rights or liberty interests not explicitly enumerated in the Constitution.  <u>Washington v. Glucksberg</u>, 521 U.S. 702, 719-20 (1997).  A procedural due process claim, in contrast, challenges the fairness of the procedure by which government action denies a constitutionally protected interest in life, liberty, or property.  <u>Zinerman</u>, 494 U.S. at 125.  "[T]he

13

deprivation by state action . . . is not in itself unconstitutional [for procedural due process purposes]; what is unconstitutional is the deprivation of such an interest without due process of law."  Id.

The Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."  Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125 (1992).  "[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (internal quotations omitted).  This principle is known as the Graham rule because the Supreme Court first recognized it in Graham v. Connor, 490 U.S. 386, 394-95 (1989).  Graham held that the Fourth Amendment's reasonableness standard applies to all excessive force claims stemming from seizures by law enforcement officers, as opposed to the "shocks the conscience" standard that applies to violations of substantive due process.  Id.  The Graham rule "simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  Lewis, 523 U.S. at 843 (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)).

The Supreme Court has not extended the Graham rule to procedural due process claims. Nor would it be appropriate to do so.  Procedural due process guarantees a fair procedure. Zinermon, 494 U.S. at 125.  A procedural due process claim seeks to redress the process by which a liberty or property interest is denied, not the actual denial of that right.  Id.  When the same conduct states a substantive due process claim and a violation of another substantive right, the Graham rule permits civil rights claimants to assert violations of that substantive right only.  If extended to

14

procedural due process claims, the <u>Graham</u> rule would prevent claimants from asserting a separate, procedural right.  Such an extension would place a significant limitation on procedural due process rights.

The Court is also mindful that the <u>Graham</u> rule stems from a reluctance to expand substantive due process.  <u>Lewis</u>, 523 U.S. at 842.  This need for judicial restraint is less pronounced in the procedural due process context, which is not itself a source of additional substantive rights. <u>See</u> <u>Zinermon</u>, 494 U.S. at 125-26.  A procedural due process claim evaluates whether a claimant had an "opportunity to be heard at a meaningful time and in a meaningful manner."  <u>Mathews</u>, 424 U.S. at 333.  Procedural due process claims do not invite open-ended decisionmaking to the same extent as substantive due process claims.  <u>See</u> <u>Collins</u>, 503 U.S. at 125.  The concerns motivating the <u>Graham</u> rule do not apply with the same force to procedural due process claims.

The ARSU supports its position that Mr. Cyr's procedural due process claim is duplicative of his First Amendment claim with two unreported district court decisions.  <u>See</u> <u>Ritchie</u>, 2012 WL at *17; <u>Decker v. Borough of Hughestown</u>, No. 3:09-cv-1463, 2009 WL 4406142, at*4-5 (M.D. Penn. Nov. 25, 2009).  These decisions summarily extend the <u>Graham</u> rule to procedural due process claims.  Neither decision is binding on this Court.  For the reasons above, the Court declines to follow them.

The ARSU has also relied on <u>Piscottano v. Town of Somers</u>, 396 F. Supp. 2d 187 (D. Conn. 2005), asserting it applied a similar analysis as the unreported decisions.  (Doc. 31 at 3-4.)  This reliance is misplaced.  The plaintiff in <u>Piscottano</u> alleged town officials had prohibited her from speaking at a select board meeting.  <u>Piscottano</u>, 396 F. Supp. 2d at 199.  Although it permitted her free speech claim to proceed, the court ruled she had not established that the board had deprived her of a constitutionally protected liberty interest and dismissed her procedural due process claim

accordingly.   Id. at 205, 207.  It is unclear from the decision whether the plaintiff alleged her free speech rights constituted such an interest.  Id. at 207.  It is clear, however, that the court did not dismiss her procedural due process claim as duplicative of her free speech claim.  Id.

To the extent the ARSU seeks to dismiss Mr. Cyr's procedural due process claim as duplicative of his First Amendment claim, its motion to dismiss is denied.

IV.   Conclusion

The ARSU's motion to dismiss is GRANTED IN PART and DENIED IN PART.  Mr. Cyr's procedural due process claim is dismissed to the extent it relied on a property or liberty interest in accessing school property, including school classrooms.  Except with respect to this interest, however, Mr. Cyr may continue to assert his Fourteenth Amendment claim.  His First Amendment claim survives in its entirety.

The parties shall file a proposed Stipulated Discovery Schedule/Order on or before July 16, 2013.  See D. Vt. L.R. 26(a).

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 2nd day of July, 2013.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge